IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| DONALD E. STUART,<br><br>      Plaintiff,<br><br> v.<br><br>LASALLE BANK NATIONAL ASSOCIATION,<br>As Trustee Under the Pooling and<br>Servicing Agreement Dated as of December<br>1, 2006, GSAMP Trust 2006-HE8,<br><br>AEGIS LENDING CORPORATION,<br><br>BAC NORTH AMERICAN HOLDING<br>COMPANY,<br><br>BANK OF AMERICA,<br><br>and<br><br>ANY UNKNOWN HOLDER OF NOTE AS TO<br>LOAN TRANSACTION DATED JULY 25,<br>2006 BETWEEN PLAINTIFF AND AEGIS<br>LENDING CORPORATION SECURED BY<br>DEED OF TRUST THAT WAS A LIEN ON HIS<br>HOME AT 2323 BUCKNER STREET,<br>PETERSBURG, VA 23805,<br><br>      Defendants. | Action No. 3:09–CV–459 |

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant Bank of America's Motion to

Dismiss (Docket No. 19).  After examining the motion, the associated briefs, and the

Amended Complaint, the Court finds that oral argument is unnecessary since the facts and

legal contentions are adequately presented and oral argument would not aid in the

1

decisional process.  E.D. Va. Loc. Civ. R. 7(J).  For the reasons stated below, the Court

GRANTS the Motion.

## I. BACKGROUND

This declaratory judgment action concerns allegedly improper finance fees under

the Truth in Lending Act ("TILA").  In 2006, Plaintiff Donald Stuart entered into a consumer

refinance mortgage loan with Aegis Lending Corporation by executing a promissory note

and deed of trust, which placed a security interest on Stuart's home located in Petersburg,

Virginia.[1]  Aegis later assigned Stuart's note to LaSalle Bank, National Association, which by

merger became Bank of America.

As part of the transaction, creditor Aegis provided debtor Stuart certain material

disclosures required by TILA,[2] including the annual percentage rate; number, amount, and

due date of payments; and any finance charges.  Stuart was also informed that under

certain circumstances he would have a right to cancel the transaction.  This dispute

specifically concerns a notary fee of $250.00, which was listed on the Settlement Statement

as being paid to a third-party company named Accurate Closings.  (Bank Mem. in Supp. Mot.

to Dismiss, Exh. B, at 2.)  National Lending Services was the closing agent for the

transaction.

Subsequently, Stuart breached the mortgage loan by failing to make payments on

the note.  Accordingly, a non-judicial foreclosure was instituted on Stuart's Petersburg

---

[1]These facts are taken from Stuart's Complaint and are assumed true for purposes of this Motion.  See Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

[2] The Bank does not dispute that Stuart's mortgage transaction was covered by TILA.

home.  In May 2008, during the pendency of the foreclosure, Stuart sent the Bank a

rescission letter, claiming that the mortgage loan should be rescinded because the Bank

failed to disclose that part of the notary fee was a finance charge in violation of TILA.

Although the Bank has yet to honor the rescission letter, the foreclosure sale was

cancelled.  In July 2009, Stuart initiated this suit, seeking a declaratory judgment that he

properly rescinded the mortgage and also requesting the Court determine an amount due

in tender by him.  Stuart amended his complaint in October 2009.  The Bank has now filed a

motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires a complaint stating a claim

for relief to contain a short plain statement of the claim that gives the defendant fair notice

of what the claim is and the grounds upon which it rests.  Fed. R. Civ. P. 8(a)(2); Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Defendants police this requirement using Rule

12(b)(6), which permits a party to test the legal sufficiency of a complaint.  Republican

Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright &

Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  A 12(b)(6) motion does

not, however, "resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses."  Id.  As a result, in resolving a 12(b)(6) motion, a court must

regard all of plaintiff's well-pleaded allegations as true, Mylan Labs., Inc. v. Matkari, 7 F.3d

1130, 1134 (4th Cir. 1993), as well as any facts that could be proved consistent with those

allegations, Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  In contrast, the court does

not have to accept legal conclusions couched as factual allegations, Twombly, 550 U.S. at

555, or "unwarranted inferences, unreasonable conclusions, or arguments," E. Shore Mkts.,

Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000); see also Ashcroft v. Iqbal,

129 S. Ct. 1937, 1950 (2009).  With these principles in mind, the court must ultimately

ascertain whether the plaintiff has stated a "plausible, not merely speculative, claim for

relief." Twombly, 550 U.S. at 555.

"Determining whether a complaint states a plausible claim for relief [is] . . . a

context-specific task that requires the reviewing court to draw on its judicial experience

and common sense." Iqbal, 129 S. Ct. at 1950.  While Rule 8(a)(2) requires a showing, not

simply a blanket assertion of "entitlement to relief," the plaintiff is not required to show

that it is likely to obtain relief.  Twombly, 550 U.S. at 556 n.3; Iqbal, 129 S. Ct. at 1949.  In

the end, if the complaint alleges—directly or indirectly—each of the elements of "some

viable legal theory," the plaintiff should be given the opportunity to prove that claim.

Twombly, 550 U.S. at 563 n.8.

### III. DISCUSSION

Stuart alleges that the Bank, via the closing agent involved in the mortgage

transaction, violated TILA  by charging him an undisclosed finance charge as part of a $250

notary fee.  The Bank argues that the closing agent was not an agent for the Bank and that

the Act specifically exempts notary fees charged by closing agents from inclusion as a

finance charge.

#### A. Background on the Truth in Lending Act

In regulating the relationship between lenders and consumers, the Truth in Lending

Act aims to ensure meaningful disclosure of credit terms and to protect consumers from

inaccurate and unfair credit billing practices.  15 U.S.C. § 1601(a).  TILA requires lenders to

disclose the cost of credit to borrowers as a dollar amount.  This is done by disclosing,

among other things, the amount financed, the finance charge, the annual percentage rate,

and the total sale price.  15 U.S.C. § 1638(a); 12 C.F.R. § 226.18.  The "finance charge" is the

sum of all charges, minus certain exclusions, payable by the borrower and imposed by the

creditor incident to the extension of credit.  15 U.S.C. § 1605(a).

TILA and its implementing regulation, Regulation Z, identify what fees are included

in and excluded from the finance charge.  Id.; 12 C.F.R. § 226.4.  Examples of fees included

in the finance charge are interest, points, credit report fees, service charges, and borrower

paid mortgage broker fees. 15 U.S.C. § 1605(a); 12 C.F.R. § 226.4(b).  Moreover, under

Regulation Z, the "Special Rule" for closing agents states that

> Fees charged by a third party that conducts the loan closing (such as a
> settlement agent, attorney, or escrow or title company) are finance
> charges only if the creditor:
> (i) Requires the particular services for which the consumer is charged;
> (ii) Requires the imposition of the charge; or
> (iii) Retains a portion of the third-party charge, to the extent of the portion
> retained.

12 C.F.R. § 226.4(a)(2) (emphasis added).

Some fees are specifically exempted from inclusion as a finance charge.  Examples of

these excludable fees include certain real estate related fees, such as charges for title

insurance, property appraisals and notary fees, provided they are bona fide and

reasonable.  15 U.S.C. § 1605(e); 12 C.F.R. § 226.4(c)(7).  Because only reasonable fees are

excludable, any unreasonable amount must be included in the finance charge.  12 C.F.R. §

226.4(c)(7).

If a mortgage lender fails to disclose finance charges accurately, it has violated the

Act, exposing the lender to penalties such as money damages, attorney's fees, and

rescission.  15 U.S.C. §§ 1635(a) & (g), 1640(a).[3]  If a borrower seeks rescission, TILA

requires the borrower to tender to the creditor the loan proceeds, less any payments that

had been made.  Id. § 1635(b).  The court may modify this process where appropriate,

including where  borrowers do not evidence the ability or intent to comply with their

rescission obligations.  See id.; see also Powers v. Sims & Levin, 542 F.2d 1216, 1221 (4th

Cir. 1976) (noting that a court may "circumscribe the right of rescission to avoid the

perpetration of stark inequity" such as "when it is known that the borrowers did not intend

and were not prepared to tender restitution of the funds expended by the lender").

### B. Whether Part of the Notary Fee Was an Unreasonable Finance Charge Imposed by Aegis

Stuart alleges that Aegis imposed the notary fee through the closing agent, National

Lending Services, and thus can be held accountable for the unreasonable finance charge

under TILA.  The Bank says that Stuart's allegations are implausible legal conclusions that

cannot survive a motion to dismiss.  Besides Stuart's conclusory assertion that Aegis

---

[3] TILA does, however, leave some room for small errors.  Under the statute's "tolerances for accuracy" provision, 15 U.S.C. § 1605(f), damages may be awarded for such a disclosure violation only if "the amount disclosed as the finance charge . . . [varies] from the actual finance charge by more than $100."  Id. § 1605(f)(1)(A). Typically, if a lender fails to disclose a finance charge that exceeds the tolerance level, the borrower can rescind the mortgage within three days following the transaction.  15 U.S.C. § 1635(a).  But when the mortgagor has instituted a foreclosure action, such as in this case, TILA lowers the tolerance amount to $35, id. § 1635(i)(2); 12 C.F.R. § 226.23(h)(2)(i), and the time period is extended to three years, 15 U.S.C. § 1635(f).  Stuart's Amended Complaint alleges that at least $100 of the notary fee was an undisclosed, improper finance charge and that he sought rescission within three years of entering into the July 2006 agreement.

imposed the fee, the Bank states that Stuart has offered no factual evidence that Aegis required the particular services for which Stuart was charged, required the imposition of the fee, or retained any portion of the fee, as is required by the Special Rule for it to be considered a "finance charge."   Because either the closing agent or the notary Accurate Closings actually imposed the notary fee, the Bank says that the Special Rule dictates that the fee is specifically not considered a finance charge under TILA.

The Bank further claims that accepting Stuart's broad agency theory would eviscerate the Special Rule "since nearly any conceivable closing agent fee would be 'imposed' by the closing agent in its general capacity as an agent for the lender." (Bank Mem. in Supp. Mot. to Dismiss 13.)  Such a result, the Bank says, cannot be correct because it would render the Special Rule completely meaningless.

Asserting that he has met his pleading obligations, Stuart points to his Amended Complaint, which alleges that "Aegis required Stuart to pay a notary fee of $250.00." (Amend. Compl. ¶ 9A.)  In his response to the Bank's motion (i.e. not in the Amended Complaint), Stuart explains that Aegis required the fee, in his view, because to get a security interest in his home, the Bank had to record the notarized deed of trust in the public records.  Thus, in Stuart's view, Aegis is not protected by the Special Rule and was required to disclose any notary fee that was unreasonable or not bona fide.

The outcome of this Motion hinges on TILA's Special Rule for closing agents.  Under this rule, Aegis was required to reveal the alleged finance charges included with the notary fee only if Aegis (1) required the documents to be notarized, (2) required the notary fee, or (3) retained a portion of the notary fee.  See 12 C.F.R. § 226.4(a)(2)(i)-(iii).  Stuart's

Amended Complaint merely states the legal conclusion that "Aegis required Stuart to pay a notary fee of $250.00." (Amend. Compl. ¶ 9A.)  It is well settled, however, that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949.  Stuart's allegations are simply sterile legal conclusions that "are not entitled to the assumption of truth." Id. at 1950.  Stripped of such legal incantation, these allegations provide insufficient factual support that Aegis required the notary fee.  As a result, Stuart's Amended Complaint fails to sufficiently plead a violation of TILA, and the Bank's Motion to Dismiss is GRANTED.[4]

### IV. CONCLUSION

For the reasons articulated above, the Court GRANTS the Bank's Motion.  An appropriate Order will accompany this memorandum.

Let the Clerk send a copy of this memorandum to all counsel of record.

It is SO ORDERED.

_____/s/_____
James R. Spencer
Chief United States District Judge

Entered this __10th__ day of February 2010

---

[4]Whether the notary fee was reasonable or bona fide is not relevant if there is insufficient allegations that Aegis was actually the one to impose the charge.  Similarly, the Court notes that because there are insufficient allegations that Aegis imposed the fee, the Court does not address the Bank's tender argument.